United States District Court
Southern District of Texas
**ENTERED**
May 27, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| JOSE DE JESUS OVIEDO HERNANDEZ, *et al*, | § § § | |
| Plaintiffs, | § § | |
| VS. | § § | CIVIL ACTION NO. 3:15-CV-176 |
| ROBERT DERING CONSTRUCTION, LLC, | § § § | |
| Defendant. | § § | |

## MEMORANDUM AND ORDER

Plaintiffs Jose de Jesus Oviedo Hernandez, Donaciano Nieto, Lorenzo Vega, Javier Santillan, and Jose Leonel Hernandez Henriques, on behalf of themselves an all others similarly situated (collectively, "Plaintiffs"), filed this action against Defendant, Defendant Robert Dering Construction, LLC ( "RDC"), under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), alleging that RDC misclassified its laborers as independent contractors and failed to pay its nonexempt employees at the federally mandated minimum wage and overtime rates. Pending before the Court is Plaintiffs' Motion for FLSA Conditional Certification and Class Notice under 29 U.S.C. § 216(b) ("Motion") (Dkt. 15). After considering the Motion, the Response (Dkt. 17), the Reply (Dkt. 18), and the applicable law, the Court concludes that the pending motion should be **GRANTED** as to all of RDC's current and former laborers within the three-year period immediately preceding entry of this Memorandum Opinion and Order.

1

## FACTUAL BACKGROUND

RDC is a construction company that specializes in the architecture, design, and construction of medical/dental projects, homes, and patient care facilities. Plaintiffs are Spanish-speaking immigrants who have made Houston, Texas home by performing manual construction labor. Plaintiffs allege that their primary duty was to perform manual labor, including demolition, metal framing, sheetrock installation, installation of fixtures, flooring, and other construction related tasks.

Plaintiffs allege that during the relevant statutory period that they worked for RDC as laborers, that they and other similarly situated laborers were misclassified as independent contractors and typically worked in excess of forty hours a week, but were not paid overtime and/or minimum wages. Plaintiffs allege that instead of paying overtime wages, RDC paid straight time wages without overtime compensation for all hours worked over forty hours per workweek. Plaintiff alleges that they were all subjected to the same or similar illegal compensation policies and practices. Plaintiffs allege that they are "similarly situated" with respect to their job duties and pay provisions because they (1) had the same or similar job responsibilities as laborers; and (2) were compensated solely with straight time wages without any provision for overtime compensation.

## PROCEDURAL BACKGROUND

Plaintiffs filed this action against RDC alleging willful violation of the FLSA. Plaintiffs served their first set of discovery on December 22, 2015. As such, more than 4 months of discovery has been conducted. The Court set the discovery deadline in this

case for December 16, 2016. On March 2, 2016, Plaintiffs filed the pending motion for conditional class certification seeking to certify the class. Plaintiffs' motion asks the Court to (1) conditionally certify this action for purposes of notice; (2) order that a judicially approved notice be sent to all Putative Class Members; (3) order RDC to produce to Plaintiffs' Counsel the potential class members' names, addresses, phone numbers, and dates of employment; and (4) authorize a ninety (90) day notice period for the Putative Class Members to join this case. *See* Dkt. 15 at 16.

RDC filed its response opposing Plaintiffs' motion for class certification. Asserting that a collective action is not appropriate here, RDC argues that Plaintiffs should be required to meet a heightened *Lusardi* standard because some discovery has been conducted. Next, RDC contends that Plaintiffs have failed to establish that there are other aggrieved individuals who wish to join the lawsuit. Lastly, RDC also argues that Plaintiffs have failed to show that they are similarly situated with respect to whether they were employees of RDC.

Plaintiffs filed a reply in which they argue that (1) the Southern District of Texas and the Fifth Circuit have routinely held in similar cases that a more stringent standard should be applied only once discovery has been completed, and despite the scheduling order entered by this Court, which provides the parties with another nine months before the close of discovery in this matter; (2) Plaintiffs' interrogatory responses, which were served on RDC prior to the filing of Plaintiffs' Motion for Conditional Certification, identify other putative class members, RDC's own document production reveals that other aggrieved individuals exist, Plaintiffs have each declared that they are aware of

3

other individuals who would be willing to join this suit if notice issues; and (3) despite the fact that Plaintiffs have provided evidence there is no individualized inquiry that exists with regard to each element of the economic realities test, including Plaintiffs' pay provisions and job duties.

Next, RDC filed Objections to Plaintiffs' Reply and Motion to Strike Plaintiffs' Exhibits or, in the Alternative, Motion for Leave of Court to File Surreply (Dkt. 20) arguing that Plaintiffs filed new evidence with their reply brief in support of their original motion to certify class. RDC cites S. D. Tex. L.R. 7.7 for the proposition that "[i]f a motion or response requires consideration of facts not appearing of record, proof by affidavit or other documentary evidence must be filed with the motion or response." The Plaintiffs filed a Response to RDC's Objection (Dkt. 22), summarily arguing that the District does not require Plaintiffs to obtain leave of Court before submitting exhibits with their Reply to their motion for conditional certification. The Court addresses all motions, arguments, and issues below.

## APPLICABLE LAW AND STANDARD OF REVIEW

The FLSA requires covered employers to pay non-exempt employees for hours worked in excess of defined maximum hours, 29 U.S.C. § 207(a), and allows employees to sue their employers for violation of its hour and wage provisions. *See* 29 U.S.C. §§ 215-16. An employee may sue his employer under the FLSA on "behalf of himself ... and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become a party and such consent is filed in the court in which such action is brought." *See* 29 U.S.C. § 216(b). Although § 216(b)

4

neither provides for court-authorized notice nor requires certification for a representative action under FLSA, certification has been recognized as a useful case management tool for district courts to employ in appropriate cases. *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 110 S.Ct. 482, 486, 107 L. Ed. 2d 480 (1989) ("A collective action allows ... plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged ... activity.").

When a plaintiff seeks certification to bring a collective action on behalf of others and asks the court to approve a notice to potential plaintiffs, the court has discretion to approve the collective action and facilitate notice to potential plaintiffs. *Sperling*, 110 S.Ct. at 487 (ADEA action); *Villatoro v. Kim Son Rest., L.P.*, 286 F. Supp. 2d 807, 809 (S.D. Tex. 2003) (FLSA action). The court also has discretion to modify the proposed class definition if it is overly broad. *See Baldridge v. SBC Commc'ns, Inc.*, 404 F.3d 930, 931–32 (5th Cir. 2005) (recognizing the court's power to "limit the scope" of a proposed FLSA action). *See also Heeg v. Adams Harris, Inc.*, 907 F. Supp. 2d 856, 861 (S.D. Tex. 2012) ("A court also 'has the power to modify an FLSA collective action definition on its own' if the 'proposed class definition does not encompass only similarly situated employees.'"). Because collective actions may reduce litigation costs for the individual plaintiffs and create judicial efficiency, courts favor collective actions when common issues of law and fact arise from the same alleged activity. *Sperling*, 110 S.Ct. at 486–87.

The term "similarly situated" is not defined in the FLSA. *See, e.g.*, 29 U.S.C. § 216. The Fifth Circuit has declined to set a specific standard for courts to apply when

considering whether employees are sufficiently similar to support maintenance of a representative action. *See Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1216 (5th Cir. 1995) (expressly declining to decide which of these two analyses is appropriate), overruled on other grounds by *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 123 S. Ct. 2148, 156 L. Ed. 2d 84 (2003). Courts faced with this issue typically apply one of two standards, *i.e.*, the two-step analysis described in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987), or the "spurious class action" analysis described in *Shushan v. Univ. of Colo.*, 132 F.R.D. 263 (D. Colo. 1990). *See Mooney*, 54 F.3d at 1216. *See also Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1259–60 & n.38 (11th Cir. 2008) (collecting cases from other circuits).

The Lusardi analysis proceeds in two stages: (1) a notice stage, followed by (2) a decertification stage. *See Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 915–16 n.2 (5th Cir. 2008) (citations omitted). At the notice stage the court makes a decision, usually based solely on the pleadings and any affidavits that have been submitted, whether to certify the class conditionally and give notice to potential class members. *See Mooney*, 54 F.3d at 1213–14. The decision is made using a "fairly lenient standard" because the court often has minimal evidence at this stage of the litigation. *Id.* at 1214. Courts, in fact, "appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan." *Id.* & n. 8 (quoting *Sperling v. Hoffmann–La Roche, Inc.*, 118 F.R.D. 392, 407 (D.N.J. 1988)). Thus, notice stage analysis typically results in conditional certification of a representative class. *Id.* After conditional certification the "putative class members are given notice and

6

the opportunity to 'opt-in.'" *Id.* After notice issues the action proceeds as a representative action. *Id.*

The second stage of the Lusardi approach—the "decertification stage"—is typically precipitated by the defendant filing a motion to decertify after the opt-in period has concluded and discovery is largely complete. *Id.* "At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question." *Id.* If the court finds the claimants are no longer made up of similarly situated persons, it decertifies the class and dismisses the opt-in plaintiffs without prejudice. *Id.* If the class is still similarly situated, the court allows the collective action to proceed. *Id.*

The *Shushan* analysis follows a procedure that is similar to the class certification procedure used under Federal Rule of Civil Procedure 23 ("Rule 23").

> *Shushan* espouses the view that § 16(b) of the Fair Labor Standards Act (FLSA) merely breathes new life into the so-called "spurious" class action procedure previously eliminated from [Rule 23]. Building on this foundation, the court determined that Congress did not intend to create a completely separate class action structure for the FLSA and ADEA context, but merely desired to limit the availability of Rule 23 class action relief under either Act. In application, the court determined that Congress intended the "similarly situated" inquiry to be coextensive with Rule 23 class certification. In other words, the court looks at "numerosity," "commonality," "typicality" and "adequacy of representation" to determine whether a class should be certified. Under this methodology, the primary distinction between an ... [FLSA] representative action and a [Rule 23] class action is that persons who do not elect to opt-in to the ... [FLSA] representative action are not bound by its results. In contrast, Rule 23 class members become party to the

> litigation through no action of their own, and are bound by its
> results.

*Mooney*, 54 F.3d at 1214.

While the Fifth Circuit has explicitly left open the question of whether the *Lusardi*

approach, the *Shushan* approach, or some third approach should be used in determining

whether employees are sufficiently similar to support maintenance of a representative

action, because *Shushan* applies the analysis used for class actions brought under Rule

23, and because the Fifth Circuit has described Rule 23's "opt out" procedure as

fundamentally and irreconcilably different from § 216(b)'s "opt in" procedure, *see*

*LaChapelle v. Owens–Illinois, Inc.*, 513 F.2d 286, 288 (5th Cir. 1975) (per curiam), most

courts in this district follow the *Lusardi* approach. *See Sandoz*, 553 F.3d at 915 n.2. *See*

*also Tolentino v. C & J Spec–Rent Servs. Inc.*, 716 F. Supp. 2d 642, 646 (S.D. Tex. 2010)

(collecting cases). This Court, therefore, will analyze Plaintiffs' motion using the *Lusardi*

approach.

At this initial state of the *Lusardi* approach, a plaintiff need only make a minimum

showing to persuade the court to issue notice to potential class members. *Mooney*, 54

F.3d at 1214 (recognizing that court's apply a "fairly lenient standard" at the initial stage

of the analysis). In the absence of Fifth Circuit guidance on the appropriate test to use at

this stage of the analysis, courts are split on the appropriate elements to consider. Some

courts use three elements, requiring the plaintiff to show that: (1) there is a reasonable

basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved

individuals are similarly situated to the plaintiff in relevant respects given the claims and

8

defenses asserted; and (3) those individuals want to opt in to the lawsuit. *See, e.g., Heeg*, 907 F. Supp. 2d at 861; *Tolentino*, 716 F. Supp. 2d at 653. Other courts, however, have rejected the third element as non-statutory. *See, e.g., Dreyer v. Baker Hughes Oilfield Operations, Inc.*, Civil Action No. H–08–1212, 2008 WL 5204149, at *3 (S.D. Tex. Dec. 11, 2008) (rejecting argument that FLSA collective action can be certified only if the plaintiff proves that others are interested in opting in to the lawsuit). Because the third element is not statutorily required and because requiring evidence of putative class members who are willing to join a collective action before an appropriate class has even been defined conflicts with the Supreme Court's directive that the FLSA be liberally construed to effect its purposes, *see Tony and Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 105 S.Ct. 1953, 1959, 85 L.Ed.2d 278 (1985), the court agrees that plaintiff need not present evidence of the third element at this stage of the litigation.

## ANALYSIS

RDC urges the Court to deny the pending motion for conditional class certification because Plaintiffs should be required to meet a heightened *Lusardi* standard and identify other aggrieved individuals who wish to join the lawsuit because some discovery has been conducted. Also, RDC argues that Plaintiffs have failed to show that they are similarly situated with respect to whether they were employees of RDC.

## A. Whether There Is a Reasonable Basis for Crediting Assertion that Other Aggrieved Individuals Exist?

To satisfy the first element of the test that courts apply at the initial notice stage of the *Lusardi* analysis Plaintiffs need only show that there is a reasonable basis for believing that other aggrieved individuals exist. *Heeg*, 907 F. Supp. 2d at 862. Attached to Plaintiffs' motion are their own declarations, all of whom state that despite regularly working more than forty hours per week they did not receive overtime and were, instead, "straight time wages."[1] The Plaintiffs also state that they know other similarly situated laborers who would be interested to learn about their rights and the opportunity to join this lawsuit. *See* Dkt. 15, Ex. 1, Hernandez Decl., ¶ 14; Ex. 2, Nieto Decl., ¶ 13; Ex. 3, Vega Decl., ¶ 9; Ex. 4, Santillan Decl., ¶ 10; Ex. 5, Henriques Decl., ¶ 10. No opt-in plaintiffs have joined this case.

By presenting the declarations in which the Plaintiffs stated that despite regularly working more than forty hours per week they did not receive overtime, and that they were paid straight time wages, Plaintiffs have satisfied the first element of the applicable test by showing that there is a reasonable basis for believing that other aggrieved individuals exist who worked as laborers on RDC's construction projects. Additionally, Plaintiffs' Objections and Responses to Defendant's First Set of Interrogatories, identified several other similarly situated RDC employees who were also misclassified as independent contractors and paid straight time wages for all the hours they worked over forty. *See*

---

[1] Plaintiffs allege that Hernandez and Henriques received one pay check each pay period for the full amount of wages owed to Plaintiffs and several other laborers, and required them to assume responsibility for receiving and distributing one pay check for the laborers' combined wages.

Dkt. 18 Ex. 6, Excerpts from Plaintiff Jose de Jesus Hernandez's Objections and Responses to Defendant's First Set of Interrogatories; Ex. 7, Excerpts from Plaintiff Donaciano Nieto's Objections and Responses to Defendant's First Set of Interrogatories; Ex. 8, Excerpts from Plaintiff Lorenzo Vega's Objections and Responses to Defendant's First Set of Interrogatories. *See also* Dkt. 18 Ex. 1, Hernandez Decl., ¶6 (specifically identifying putative class members Cristian Barrera, Mario Almanza, and Gesler Velasquez as some of the RDC employees with whom he worked while employed at Robert Dering); Ex. 2, Nieto Decl., ¶5 (establishing RDC co-workers Cristian Barrera, Mario Almanza, and Gesler Velasquez as putative class members); Ex. 3, Vega Decl., ¶5 (naming RDC co-worker Mario Almanza); Ex. 4, Henriques Decl., ¶6 (identifying RDC co-workers Cristian Barrera and Gesler Velasquez as putative class members).

Additionally, with more than six months left in the discovery period, the Court finds that a "heightened" standard for a motion for conditional certification is not warranted in this case. *See McKnight v. D. Houston, Inc.*, 756 F. Supp. 2d 794, 802-03 (S.D. Tex. 2010). This case is at the "notice stage" of the *Lusardi* analysis. The issue is conditional certification. Ordinarily, at this stage, the parties have presented only affidavits and have often conducted no discovery. In some cases, the parties have taken some discovery and have submitted the results of that work. *See, e.g., Basco v. Wal–Mart Stores, Inc.*, Civ. A. No. 00–3184, 2004 WL 1497709, at *3 (E.D. La. July 2, 2004). In a few cases, the parties have taken extensive discovery, justifying application of the more stringent stage-two standard. *See e.g., Pfohl v. Farmers Ins. Grp.*, No. CV03–3080 DT (RCX), 2004 WL 554834, at *2–3 (C.D. Cal. Mar. 1, 2004). Less discovery has been

conducted in this matter than was conducted in *McKnight*. This case is in the beginning category; neither party has taken a single deposition in this matter. There remains significant additional discovery to be completed, including discovery into the nature and extent of the relationships among the defendants. Under this Court's scheduling order, the parties have until December 16, 2016, to complete discovery. (Dkt. 11). The fact that little discovery has been conducted does not increase the Plaintiffs' burden at this first, conditional certification stage to the more onerous standard that applies at the second, decertification stage. A more "heightened" standard is "only appropriate after discovery is largely complete and the matter is ready for trial." *McKnight*, 756 F. Supp. 2d at 802; *Mooney*, 54 F.3d at 1214; *see also McCarragher v. Ryland Grp., Inc.*, 2012 WL 4857575 (S.D. Tex. Oct. 11, 2012) ("Moreover, discovery thus far has been limited to 'written discovery requests,' and neither party has submitted to any deposition testimony… the Court will analyze Plaintiffs' motion using the ordinary *Lusardi* standard.").

### B.  Whether Other Aggrieved Individuals Are Similarly Situated to Plaintiffs?

To satisfy the second element of the test that courts apply at the initial notice stage of the *Lusardi* analysis Plaintiffs must demonstrate a reasonable basis for believing that a class of similarly situated persons exists. *See Heeg*, 907 F. Supp. 2d at 862 (citing *Lima v. Int'l Catastrophe Solutions, Inc.*, 493 F. Supp. 2d 793, 798 (E.D. La. 2007)). "Potential class members are considered similarly situated to the named plaintiff if they are 'similarly situated in terms of job requirements and similarly situated in terms of payment provisions.'" *Id.* (quoting *Ryan v. Staff Care, Inc.*, 497 F. Supp. 2d 820, 825 (N.D. Tex.

2007) (citing *Dybach v. State of Fla. Dep't of Corrections*, 942 F.2d 1562, 1567–68 (11th Cir. 1991)). "'A court may deny plaintiffs' right to proceed collectively if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice.'" *Id.* (quoting *Aguirre v. SBC Commc'ns, Inc.*, Civil Action No. H–05–3198, 2006 WL 964554, at *5 (S.D. Tex. April 11, 2006)).

The evidence before the Court shows that five former employees of RDC who are all claiming that they were misclassified as independent contractors and were paid only straight time wages for all of the hours they worked over forty in a workweek during the relevant time period. Therefore, the Court finds that the presence of more than one plaintiff in an FLSA matter provides the court with some evidence that multiple similarly situated employees have been subjected to the same discriminatory policy or plan. *Compare Mason v. Amarillo Plastic Fabricators,* No. 2:15-CV-00109-J, 2015 WL 4481233, at *5 (N.D. Tex. July 22, 2015)(denying conditional certification because there were no other named Plaintiffs with similar allegations of FLSA violations that would indicate that the Defendant may have implemented the same policy with respect to different employees, and that additional plaintiffs may wish to join the collective action suit) with *Jones v. SuperMedia Inc.*, 281 F.R.D. 282, 289-90 (N.D. Tex. 2012) (granting conditional certification despite the absence of affidavits from potential plaintiffs because there were four named plaintiffs who provided declarations stating that they each suffered similar FLSA violations).[2] Because the evidence now before the Court shows that there is

---

[2] "It is true that in some situations, courts have allowed for class certification without the submission of affidavits from similarly situated employees, or affidavits from named Plaintiffs

a reasonable basis for crediting Plaintiffs' assertion that other aggrieved individuals exist and that the other aggrieved individuals are similarly situated to Plaintiffs in terms of both job requirements and payment provisions, the Court concludes that Plaintiffs have provided sufficient evidence to satisfy the first stage of the *Lusardi* analysis, and this matter should be conditionally certified as a collective action under 29 U.S.C. § 216(b) with respect to the putative class members.

Additionally, RDC's Objections to Plaintiffs' Reply and Motion to Strike Plaintiffs' Exhibits or, in the Alternative, Motion for Leave of Court to File Surreply (Dkt. 20) is **OVERRULED** and/or **DENIED AS MOOT**. *See Simmons v. T-Mobile USA, Inc.*, 2006 WL 3447684, at *1 (S.D. Tex. Nov. 22, 2006) (leave of court was not required to submit supplemental authorities in the context of a motion for conditional certification). RDC argues that "Plaintiffs filed their reply, which included new declarations from some of the plaintiffs and additional documentation regarding subcontractors that performed work for RDC." Dkt. 20 at 4. Despite the additional exhibits attached to Plaintiffs' Reply, the Court's ruling would remain the same. Like the plaintiff in *Simmons*, Plaintiffs' declarations add details to clarify more general facts previously alleged by Plaintiffs.

---

that provide specific information about other employees" who wish to opt in. *Tolentino v. C & J Spec–Rent Servs. Inc.*, 716 F.Supp.2d 642, 653 (S.D. Tex. 2010). However, in those rare cases where certification was permitted in the absence of such affidavits, the original lawsuit typically included more than one named plaintiff-thus providing the court with some evidence that multiple similarly situated employees may have been subjected to the same discriminatory policy or plan." *Mason v. Amarillo Plastic Fabricators*, No. 2:15-CV-00109-J, 2015 WL 4481233, at *5 (N.D. Tex. July 22, 2015)(internal quotations omitted).

## CONCLUSION AND ORDER

For the reasons explained above, Plaintiffs' Motion for FLSA Conditional Certification and Class Notice under 29 U.S.C. § 216(b) (Dkt. 15) is **GRANTED**, and the court provisionally deems this action a collective action and defines the conditionally approved collective class as follows:

> **All former and current employees of Robert Dering Construction, LLC who worked as laborers on construction projects, were employed from July 13, 2012, to the present, and received straight time wages for all of the hours they worked in excess of forty (40) hours a week.**

Within fourteen (14) days of the entry of this Memorandum Opinion and Order Robert Dering Construction, LLC shall provide Plaintiffs with a list of all employees fitting the description of the conditionally certified class in a usable electronic format. This list shall include each individual's full name, last known mailing address, e-mail address (if known), telephone number, and date(s) of employment. Plaintiffs shall have fourteen (14) days from the receipt of this information to mail the proposed notice to the potential class members. The opt-in period shall be ninety (90) days from the date the notice is mailed.

**IT IS SO ORDERED.**

SIGNED at Galveston, Texas, this 27th day of May, 2016.

George C. Hanks Jr.
United States District Judge